Good morning. Good morning, Your Honors. May it please the Court. I'm Todd Gregorian of Fenwick & West on behalf of the San Francisco Herring Association. I'll monitor my time, but I'd like to reserve three minutes for rebuttal. This case challenges the National Park Service's decision to enforce its regulations in waters where Congress gave it no administrative jurisdiction. The Herring Association, in the proposed amended complaint, alleged specific instances in which its members were ordered to stop fishing, pull their nets, and vacate those waters. Those orders were final agency actions subject to judicial review under the Administrative Procedure Act. Those fishermen were not required to disobey the orders and subject themselves to citation and arrest in order to challenge the agency's actions. So, counsel, excuse me. You're talking about this final action. Are we looking at the situation where there's a heightened patrolling of the waters versus the actual stating that there will be no fishing and you will be prosecuted immediately for doing so? It seems like there was some discrepancy with respect to that. So that's the crucial distinction here, Your Honor, and why we contend this new complaint is not foreclosed by the mandate. The first panel construed our complaint to challenge heightening of patrols in the waters. That is a programmatic decision that does not affect the rights of any individual. It said that might later lead to practical effects, but we are not there. It is, at best, a first step in the enforcement process. By contrast, the amended complaint alleges specific instances on which orders were given. Those affected the rights and responsibilities of the parties who received those orders. Specifically, if they disobeyed, they'd be subject to arrest, prosecution, and potential criminal penalties, including imprisonment for up to six months. And that's why there's essentially two aspects to why we think this is not foreclosed by the mandate. One is procedural and one is substantive. The procedural aspect is the panel said the complaint should be dismissed. It did not say with prejudice. A simple dismissal does not foreclose the possibility of amendment in any context, and that's true in district court and it's true as to the rule of the mandate. Substantively, the court engaged in a construction of the complaint. There was information in the record about interactions between the patrols and the fishermen, and there were statements at oral argument about those things. But the court elected to construe the complaint as challenging of the patrols and not those things in an act of judicial restraint. Well, that was true in bicycle trails as well. In bicycle trails, they shut down the whole way, but that they did that didn't get you home free. It seems to me the problem I find with your case is that you're trying to get to an agency, and I understand that, and I understand why you want to do it. I'm not opposed to fishermen or anything like that. I eat their product all the time. But we have a process that you have to go through, and it isn't that the agent closed up. You have to get the agency to make a final decision. In the case of United States v. Wild Fish Conservatory, Chief Judge Thomas outlined that specifically, that it isn't enough that some agent does something. You have to complain to the agency, and until that action takes place, there's no case. And in Chief Judge Thomas' case, they were opening up tons of water, and it was quite a program. It's more than just get out of the fishing boat. So how have you established that the agency has actually ruled on this case? Sure. I would point the court, Judge Wallace, to the Navajo Nation case. In that case, the Park Service took relics and remains of the tribe. The tribe requested them to be returned, and the agency said, we are engaged in an inventory process. The agency meaning some person further down, not the head of the agency. Is that correct? I just want to be clear of what the case held. So I don't believe the opinion specifies. It describes an informal meeting between the tribe and representative of the agencies in which those representatives referred to an informal opinion that they would inventory the items. What's that opinion? That is the Navajo Nation case. Okay. And it is 819F3-1084. Okay. Following the meeting, there was an exchange of letters that referred back to the informal opinion given orally at the meeting. And that was sufficient to constitute a final agency action challengeable under the APA. Now, we have gone a further step here. You haven't proved the second step, have you, that it went to the agency in this case? Well, so, Your Honor, at paragraphs 60 through 65 of the proposed amended complaint, we described the exact same types of meetings and exchange of letters with the agency about whether it would enforce the commercial fishing prohibition in these waters. And the indication was that it was. And so I think this is what cabins this case, is that the individual officer orders directing fishermen to leave the waters are clearly on this record reflective of the agency's decision to enforce. And furthermore, that's a final decision, not subject to further revision, because it was reached, arrived on. Excuse me. I don't mean to interrupt you. Where in the record do I find evidence that the agency in Washington, D.C., has made this determination? Is there someplace in the record I can read? There is, Your Honor. I would start by saying we're here on the denial of a motion for leave to amend. So those things are alleged in the complaint at paragraphs 60 to 64, which are around excerpts of record 50 to 52, I believe. We also have some of the actual correspondence between the agency and the fishermen in the record, in the excerpts for this appeal. I believe we did in the first. What correspondence are you referring to? Because you do have letters from the Department of Interior to commercial herring fishermen, November 14, 2012. Is that what you're referring to, or are you referring to something different? So, well, okay. So I don't believe the informal exchange of letters, for example, between counsel is included in the record. We do have the informational notices, which are letters from the agency sent to the California Department of Fish and Wildlife and requested to be provided to the fishermen that set forth the agency position. Excerpt of record 74, which is attached to the proposed amended complaint, is an example of that, and that is the November 14, 2012 letter. And by the allegations of the complaint, the fishermen saw this or received this letter? Correct. This follows a whole history, Your Honor, where the agency first suggested that it might have jurisdiction over the waters. It started providing these letters to Fish and Game, asking them to provide them to the fishermen. The State of California disputed jurisdiction for several years, did not provide them, and that dispute was finally resolved several years before the actions challenged in this case, and Fish and Game started providing the notices to the fishermen. So they were, in fact, received. There were notices other than some agent with a badge coming in and saying get out of the water? That's correct. This one, for example, is signed by Frank Dean, the general superintendent of the GGNRA. I'm sorry, you let your voice drop. He's identified as the general superintendent. It's on Department of the Interior letterhead. That's ER 74? Correct. And there's a series of these that went out. Only several of them are attached to the complaint, but they are alleged in the complaint. What does the complaint allege about after that letter was sent out? I thought there was some other further interaction that occurred. Yes, Your Honor. So those are the meetings referenced at paragraph 60 to 64, and that we think are comparable to those that occurred in Navajo Nation. Subsequent to that, there was a one-year delay until the National Park Service acquired a boat to be able to patrol the waters, and then enforcement began leading to the challenged actions in January 2013. Now, the government has argued that the notices are informal statements of position, and we have, throughout the litigation, taken them at their word. But I think what they do in this case is they are indicia that the orders to the fishermen to leave the waters are, in fact, final agency actions because those orders are consistent with the stated position of the agency. So the touchdown of the inquiry is whether these orders meet the Bennett test, and there's two aspects to that. One is whether the decision process of the agency is at an end. The second is whether rights are determined. And I think it's clearly met in this instance. The informational notices began in 2003. Enforcement began in November of 2011. And eight years on, there's no indication that there's any ongoing process at the agency that would change the position that is set forth in the informational notices in its response to the herring agency and the position that its officers are taking in the field. Those also determine the rights and obligations of the fishermen. There's no intermediate enforcement step in this instance to challenge. The patrols were the first step, a programmatic decision about when and where to go in the waters. The orders were the next step. The only way to trigger a further agency decision would be to not comply with those orders and subject oneself to arrest. And we don't believe that is required. I'd like to reserve the remainder of my time, if I may. Thank you, Mr. Gregorian. Ms. Katselis. Good morning, and may it please the Court. Anna Katselis for the Department of the Interior. In the Association's prior appeal in this case, this Court squarely decided that the Park Service alleged enforcement of a commercial fishing prohibition through alleged heightened patrols did not constitute reviewable final agency action. The Court accordingly remanded with instructions that the District Court dismiss for lack of subject matter jurisdiction, and the District Court did so. In the course of that remand, the District Court correctly rejected the Association's attempt to re-litigate the final agency action issue that this Court squarely decided already. Final agency action is a necessary jurisdictional element of this case. The rule of mandate and the law of the case doctrine both preclude re-litigation of that issue on remand. I guess I'd like you to address the prior opinion in more detail because it does, I think, take pains to say this is really about patrols, and it seemed to regard the agency action that was being challenged as essentially the presence or the patrolling in the Bay, whereas the plaintiffs have now said we've come forward with specific instances where fishermen were told either to remove their nets or that they couldn't fish in a particular area and that they comply with those. That does seem different than at least how the prior panel conceived of the prior complaint. I'm happy to do that, Your Honor. The prior panel opinion is very clear that the panel gave the Association an opportunity to clarify what it in fact sought to challenge in this litigation. The Association is incorrect, and it's a misrepresentation that the prior panel limited its analysis to the Association's complaint. The Court gave the Association the opportunity to clarify what are you challenging here, what final agency action has the Park Service taken. And I would point the Court to Excerpts of Record 110, footnote 2 of the Court's prior opinion. The Association previously clarified that it did not seek to challenge the notices that it spent most of its argument discussing. They clarified they do not seek to challenge those. They did not claim those are final agency action. And I think, Judge Wallace, your questions were directly on point because the problem here is not a pleading defect. There's not a failure to plead an existing final agency action. There is no final agency action in this case. There are three possibilities for how the Association could obtain review of this issue. And this was the prior panel mentioned one of them, which is the petition, a rulemaking petition. When the regulation was promulgated, if they were aggrieved, they could have challenged the regulation. They had six years to do that under the APA. Isn't there a point that they're not challenging the regulation? They think the regulation is fine. They just dispute the applicability of the regulation to these particular waters. And to do that, there are two possibilities, Your Honor. One is that they could allow a member to be sanctioned, and we recognize that that's not a good option, and we're not saying it is necessary. Hasn't the Supreme Court said several times you don't have to do that, you don't have to violate the law to be able to have final agency action? Well, the Supreme Court, you may be talking, thinking about Susan B. Anthony's list, and that's a standing decision. But there are a number of cases, for instance, that we have cited that there does need to be, I mean, there needs to be a final agency action in the case. You know, even the filing of an administrative complaint. We've cited FTC v. Standard Oil of California. The Supreme Court has held it's not reviewable. So there's a standing component of that, and we haven't challenged standing. But what they could do, if they don't want to subject themselves to enforcement, Your Honor, is petition the agency for a rulemaking to amend or repeal the rule. Well, they maybe could do that, but the question is whether they were required to do that. That, if you petition the agency, and they either engage in a rulemaking, which is a cumbersome process, or they don't, that may lead to final agency action, which could then be challenged. But I think their point is that what they have alleged is that there were a series of notices that set forth the Department of Interior's position on this, and that individual fishermen were specifically told in the waters of San Francisco Bay that they could not do something, which they understood to be on pain of penalty. And so given those allegations, I'm not sure why this wouldn't be the consummation of the agency's process on this issue. Well, there are two. I have two. It's a two-part answer. The first answer is that this was already presented to the prior panel. It's already decided. Its rule of mandate and law of the case prevent relitigation of this issue. But second, what Your Honor is referring to, and there's really very little difference, first of all, also between the First Amendment complaint and the Second Amendment complaint in the allegations. The First Amendment complaint alleged these. They're really talking about these patrols in January 2013 in these waters. They allege in the First Amendment complaint that Park Service communicated the prohibition to its members. They're alleging the same exact thing in the Second Amendment complaint. All they have added is names of their members and dates. There's no difference, substantively, in the allegations. It's the same issue that this Court already decided. But, Your Honor, just ---- Can I just pause you there, if I may? Yes. It seems when you look at the prior panel opinion, it refers to the patrols as essentially the first step in the agency action. But here don't we have, by the allegations of the complaint, something considerably beyond just mere patrolling? There's no sanction. There's no order. There's no ---- No, there isn't. It's the same conduct that this Court already evaluated and determined is not final agency action. And Judge Wallace was getting to this point. Is there anything from D.C. No, there is no sanction. So you don't even have an agency action within the definition of the APA, let alone a final agency action, which is, of course, it marks the consummation of the agency's decision-making process, and it has final consequence, or it has legal consequences. Neither of these prongs is satisfied here. The consequences of which they complain flow from the regulation. The Park Service's restatement of that has no legal consequences. We have cited numerous cases in our brief that support this proposition, that in agencies that stand for this important proposition, that an agency's restatement of existing law and an agency's statement of opinion of how existing framework applies to particular facts is not reviewable. And two of those ---- I understand. Excuse me. I understand that part of your argument, that you can't have agency action by every agent that's out running around on their own. To get to the agency, there must be the agency involved. I get that. And I get that Chief Judge Thomas' report is very strong on this. But what counsel is arguing now is that they went beyond that, that is, there was an actual interaction between their client and the agency, and there was that discussion. Now, I can understand your argument that just because one of the enforcing agents say you can't fish here is not agency action. I can understand that. There has to be more. But isn't there more if counsel ---- according to counsel's argument, when there's this interaction with the agency and there are some documents coming forth from that? What's your response to your friend's argument? No. And they pointed the court, I believe, to allegations 60 through 64. Those allegations are describing the same informational notices that they told the prior panel that they were not challenging. There's nothing new. Those are the 11 and 12 notices that the Park Service issued annually for years. Restating the prohibition. And then they're talking about the same patrols and communications. This is the same conduct. It is the exact same conduct. They've added dates and they've added names. But this is the same conduct that they alleged before. And there is ---- so the informational notices, we have called them in our briefing, are restating the regulatory prohibition and the Park Service's opinion that it applies in these waters. That is exactly what Your Honor is discussing. It's not final agency action. Now, just hypothetically, if they petitioned the Park Service to amend or change its rule and there was a decision on that, there would be a clear decision that there would be a focus for APA review. There would be a proper record. This sort of alleging what happened and sort of a factual inquiry of what actually happened here and when is unusual for an APA case. There is normally a clear final agency action and a record that develops that is the consummation of that decision. Now, a rulemaking petition would provide that, and that's what you would have. But, Your Honor, there is absolutely nothing of that sort now. And to the extent that the association is saying that we now would like to challenge the informational notices, they, again, footnote two of the prior panel's opinion, they said, clearly, we do not seek to challenge those. It may also be in their briefs in this appeal. I was looking for it, but I couldn't find it in the limited amount of time. Isn't the point that the informational notices gave context to what is a new allegation in the complaint about specific interactions between National Park Service rangers or other people allegedly operating at their direction, that once you had those interactions in San Francisco Bay where fishermen were told, in some cases, to actually remove their nets or that they could not fish somewhere, they had the benefit, at least by the allegations of the complaint, of a prior notice that they had received stating that people who fished in these waters would be subject to punishment? There's no difference. And we're looking at the ER 285, Excerpts of Record 285, and Excerpts of Record 5354. We're looking at the same. The allegations are describing the exact same heightened patrols with a little bit more detail. Can I ask, how do you address the Sturgeon case, which has been in this court on two occasions and the Supreme Court on two occasions, recognizing that it didn't address this jurisdictional issue that we're discussing here this morning, but the facts are fairly similar in terms of somebody who was stopped by Park Service officers and told not to use, in that case, his hovercraft. And one might imagine if there was a big jurisdictional problem, given the lengthy history of that case, it would have been noticed. So what do you think is the difference between that case and this one? Well, the first point, of course, that we have made is that, you know, final agency action wasn't raised in Sturgeon. Other issues were raised in Sturgeon, but to the extent that this court or the Supreme Court assumed the requirement to be satisfied, that holding has no precedential weight. That's Steel Company and its progeny. But beyond that fact, there are factual differences. You know, whether the United States makes a final agency action argument in a case is a case-by-case determination. Now, as the Association has mentioned, Sturgeon petitioned the Park Service. In its allegation, Sturgeon petitioned the Park Service in October 2010, filed suit before there was an answer. Now, the state of Alaska, of course, was also a plaintiff in Sturgeon. It filed a complaint and intervention. Alaska did a rulemaking petition, and its petition was denied. So you had two petitions in Sturgeon. You don't have that here. The facts are quite different on that point. But the main point is that the issue wasn't raised there and it wasn't addressed. Contrast to that here where it has been raised, and it's also been decided by a prior panel of this court. And I would like to return to that point for a moment because the rule of mandate and the law of the case are quite important. They serve very important interests in finality, efficiency, respect for the decisions of higher courts that are important here. This court, and when you look at the mandate and in construing a mandate, you can look at the opinion, you look at the language of the remand order. The remand order is quite clear. Remand for instructions to dismiss for lack of subject without prejudice. Now, also, if I could explain for a minute what normally happens in a dismissal for lack of subject matter jurisdiction without prejudice, it's without prejudice to a new lawsuit. If there is no prejudice on the merits of this, they could file a new lawsuit if there is a final agency action. That decision, though, is precedential and preclusive as to the final agency action issue. But there is no prejudice that they could file a new lawsuit. But as I was trying to explain earlier, or hoping to explain, a lawsuit on a proper final agency action would be a different lawsuit because it would have a different record. And there would be a proper focus for the court's review. This case isn't that. All you have here is exactly the same thing that the prior panel had. You have the Park Service restating its regulatory prohibition, which has been on the books for decades. You have communications to its members. You have no enforcement. You have no sanction. Again, there's not an agency action. There's certainly not a final agency action. And they had ample opportunity to make this argument before the prior panel. And Sturgeon, the first Sturgeon decision, had already been decided, so any assumption of jurisdiction that happened had already occurred. But this was flushed out before the prior panel. The prior panel concluded that there was no final agency action. And respect for that decision is required. If there are no further questions, I'll rest. Thank you, counsel. I think I'd like to start with why a petition in this case is not required. Not only is it not required, it's a poor vehicle to bring that issue to a court's review. The question is whether there's a final agency action. The APA makes those actions reviewable without regard for whether a rulemaking petition could also be brought. And that's clearly shown in Sackett, where the property owners received an order affecting their property. It was based on a regulation about what waters the United States. They could have had a rulemaking petition seeking to change EPA's procedures for what counts as waters of the United States. That fact did not preclude their review of the final agency action in order to remediate their property. Practically speaking, a rulemaking petition doesn't address our issue. The rule is facially valid. I'd point the court to the hypothetical we mentioned in our briefs. Golden Gate Park is San Francisco property. Imagine tomorrow the Park Service issued a notice that said we will be prohibiting campfires in Golden Gate Park in the upcoming season. The next day, rangers enter Golden Gate Park and direct people to extinguish their barbecues and take their fires outside of the park. No one would think the issue there is the agency's regulation prohibiting campfires in the national parks. The issue is the enforcement action. Council brought up a list of cases that refer to agency restatements of position. And I think the parties are in agreement that the informational notices were that in this case. And Judge Press had it exactly right. We do not challenge those informational notices standing alone. And the government has said that those are not final agency actions. So the parties are in agreement on that. But the orders to the fishermen are not simple restatements of position. At the very least, there's a factual question about that on which we're entitled to be credited about what occurred. But the conduct resembles none of the conduct in the cases that involve restatements of agency position. Those include a frequently asked question sheet, a response to an informal request for an opinion before a city files a licensing application, and the like. Finally, with respect to... I ask you, your opposing counsel made the point that this all could have been sort of pled earlier, raised earlier. And the case has come up now on the second appeal. Was there a reason why these specific interactions weren't pled in the original complaint that came back to this court the first time around? So we believe we had sufficiently alleged a final agency action, and that was not challenged until the first appeal. It was not challenged in the lower court. And that's the entire explanation for the delay in this case, is that that only became an issue once this court had looked at the complaint and ruled as it did. I would just say, as to the rule of mandate, the first panel was careful to decide only on the issues it decided on. And it would be a mistake to reinterpret them as deciding issues that they specifically reserved. Do you have a question? No, I'm not. Sorry. Thank you, counsel. Thank you. So San Francisco Hearing Association versus the U.S. Department of the Interior is now submitted.
judges: Wallace, Bress, England Jr.